HOLCOMB v. HOLCOMB

[132 N.C. App. 744 (1999)]

———————

DANIEL CHARLES HOLCOMB v. PATRICIA C. HOLCOMB

No. COA98-783

(Filed 6 April 1999)

**Divorce— alimony—reciprocal agreement—merger clause inadequate**

A trial court finding that monthly payments were not true alimony or true child support but were reciprocal consideration for property settlement provisions and that the agreement was integrated and not modifiable was remanded where the clause relied upon by the trial court was not an integration clause but instead a standard merger clause often used in contracts. An integration clause is designed to express the intent of the parties as to whether the provisions of an agreement were reciprocal consideration for each other so that the agreement is an integrated agreement and no such clause or language was present.

**HOLCOMB v. HOLCOMB**

[132 N.C. App. 744 (1999)]

Appeal by plaintiff from order entered 30 March 1998 by Judge Sarah F. Patterson in Wilson County District Court. Heard in the Court of Appeals 23 February 1999.

Daniel Charles Holcomb (plaintiff) and Patricia C. Holcomb (defendant) were married on 17 September 1966 and lived together as husband and wife until 29 March 1990, when they separated. Two children were born to their marriage: Michael James Holcomb, who was emancipated at the time of the parties' separation, and Christian Allen Holcomb (Christian), born 18 November 1975. Both defendant and Christian are insulin-dependent diabetics. Several months prior to their separation, plaintiff and defendant purchased a business known as Air Compressor Equipment Company (the business) and located in Wilson, for the sum of $300,000.00. They borrowed funds from several sources, including $40,000.00 from plaintiff's father, to pay the purchase price of the business. At the time of their separation they still owed $300,000.00 on the business, so that it had little or no net value.

On 17 July 1990, plaintiff and defendant entered into a written Separation Agreement (the Agreement). Each of the parties was then represented by counsel. The Agreement provided that the consideration for the Agreement "[was] the mutual promises and agreements [t]herein contained." The Agreement then provided that the parties agreed to live separate and apart from each other, and agreed to release each other from all claims, specifically including claims "arising from or existing because of said marriage," and further including the right to administer the estate of the other.

A section entitled "<u>ALIMONY</u>" read as follows:

HUSBAND and WIFE have agreed that WIFE is entitled to a specific amount to be set for alimony with no increase or decrease. HUSBAND agrees to pay child support in the sum of $500.00 per month and when his obligation for child support terminates as hereinafter set out, then the alimony payments of $500.00 per month to the WIFE will begin and will be due on the first of each month after the termination of the child support payments. These payments shall continue until the death or remarriage of the WIFE, whichever occurs first. Additionally, HUSBAND shall carry hospitalization and medical insurance on WIFE which will be at least equal in coverage to the existing policy and shall keep same in full force and effect until WIFE's remarriage or death, whichever occurs first. WIFE shall be responsible for the

deductible as well as the twenty percent (20%) not covered by insurance, as well as any non-elective surgery not covered by health insurance and those medical expenses which are deemed uncovered items by the health insurance provider. In the event WIFE cannot be covered by the group policy, HUSBAND agrees to be responsible for a share of the cost of medical insurance coverage on WIFE in at least an amount equal to what he is paying at the time such group insurance becomes no longer available.

A section entitled "CHILDREN" follows the ALIMONY section, and provides in pertinent part that:

WIFE shall have the custody of the minor child [Christian] with HUSBAND having the right to reasonable visitation. HUSBAND shall carry hospital and medical insurance on the minor child and be responsible for the deductible as well as the 20 percent not covered by insurance. HUSBAND will not be responsible for the cost of any medical expenses which are deemed noncovered items by the health insurance provider and any elective surgery not covered by health insurance. HUSBAND agrees to pay WIFE the sum of $500.00 per month for the support and maintenance of the minor child. This support obligation shall continue so long as the child attends college or a school of higher education, including but not limited to a technical school, universities or colleges. As stated above, when the $500.00 child support obligation ceases for HUSBAND, WIFE'S alimony payments that she is to receive from HUSBAND shall begin.

The Agreement then provided for a generally equal division of the real and personal property of the parties. Defendant agreed to transfer all interest in the business to plaintiff, and plaintiff agreed to assume all debts in connection with the business. The parties agreed that the division of property in the Agreement was in settlement of their rights under the Equitable Distribution Act. The Agreement also included a merger clause, which read:

ENTIRE AGREEMENT. This agreement contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressed and set forth herein.

The Agreement was incorporated in the divorce judgment entered herein on 12 December 1991.

The parties divided their property in accordance with the Agreement. Christian resided with defendant during his freshman and sophomore years in high school, and with plaintiff during his junior and senior years in high school. Since his graduation from high school, Christian has not lived with either of his parents, although both have contributed to his support and to certain legal fees. Christian has attended Pitt Community College since his graduation from high school, although he has not done so continuously, and was still attending Pitt Community College at the time the order was entered herein.

Plaintiff paid the sum of $500.00 each month to defendant after the execution of the Agreement, even during the two years when Christian lived with him, and plaintiff also performed his obligations under the medical insurance section of the Agreement. The parties do not agree whether the $500.00 monthly payments were child support or alimony. Plaintiff stopped making the monthly $500.00 payments to defendant after October of 1997, and also stopped making the quarterly payment on defendant's medical insurance policy.

On 8 January 1998, defendant filed a motion asking that plaintiff be held in contempt for failing to make the monthly payments to her and failing to maintain her medical insurance. An Order to Show Cause was issued by a district court judge directing plaintiff to appear and show cause why he should not be punished for contempt for failing to make the payments to defendant.

On 28 January 1998, plaintiff filed a motion to terminate or reduce any alimony obligation he might have to defendant on the grounds that she was openly cohabiting with a male person as if they were married, and the grounds that defendant was no longer a dependent spouse. The trial court heard both motions on 26 February 1998 and entered an order on 30 March 1998 granting defendant's motion that plaintiff be held in contempt for failing to make the monthly payments and failing to pay the medical insurance premiums. The trial court ordered that plaintiff be taken into the custody of the Sheriff until he purged himself of contempt by paying the sums due defendant.

The trial court determined that the $500.00 monthly payments were not "true alimony or true child support" but were reciprocal consideration for the property settlement provisions of the order in which defendant released her interest in plaintiff's business, and therefore concluded that the Agreement was integrated and not mod-

**HOLCOMB v. HOLCOMB**

[132 N.C. App. 744 (1999)]

ifiable. Plaintiff appealed, assigning error to the trial court's determination that the Agreement was a "fully integrated agreement," and also arguing that the evidence of defendant was not sufficient to rebut the presumption that the provisions of the Agreement were separable. Plaintiff contends that the trial court's findings of fact are not supported by the evidence, that the findings do not support the conclusions of law, and that the trial court erred in denying his motion to terminate or reduce alimony payments to defendant.

*W. Michael Spivey for plaintiff appellant.*

*George A. Weaver for defendant appellee.*

HORTON, Judge.

The trial court was called upon to determine whether the monthly $500.00 payments to defendant, which were designated as alimony in the Agreement, were in fact "true" alimony payments and thus modifiable, or were reciprocal consideration for property settlement provisions in the Agreement, and thus not modifiable. In order to rule upon plaintiff's assignments of error, we must determine whether the trial court applied the correct legal principles in concluding that the Agreement was an integrated agreement and denying plaintiff's motion to reduce or terminate his monthly "alimony" obligation to defendant.

Justice (later, Chief Justice) Sharp explained the reciprocal consideration principle of integrated agreements in *Bunn v. Bunn*, 262 N.C. 67, 136 S.E.2d 240 (1964):

[A]n agreement for the division of property rights and an order for the payment of alimony may be included as separable provisions in a consent judgment. In such event the division of property would be beyond the power of the court to change, but the order for future installments of alimony would be subject to modification in a proper case. *However, if the support provision and the division of property constitute a reciprocal consideration so that the entire agreement would be destroyed by a modification of the support provision, they are not separable and may not be changed without the consent of both parties.*

*Id.* at 70, 136 S.E.2d at 243 (citations omitted) (emphasis added).

In *White v. White*, 296 N.C. 661, 252 S.E.2d 698 (1979), our Supreme Court quoted the above language from *Bunn* with ap-

HOLCOMB v. HOLCOMB

[132 N.C. App. 744 (1999)]

proval and then proceeded to consider whether the periodic payments ordered to be made to Mrs. White were actually "alimony," or were non-modifiable portions of an integrated property settlement agreement.

> The question, [before us] then, is whether the provision for support payments and the provision for property division in the 17 November 1969 consent judgment are independent and separable. The answer depends on the construction of the consent judgment as a contract between the parties. "The heart of a contract is the intention of the parties. The intention of the parties must be determined from the language of the contract, the purposes of the contract, the subject matter and the situation of the parties at the time the contract is executed."

> The parties here have not indicated their intent regarding separability of the two provisions by the language of the contract itself.

*Id.* at 667-68, 252 S.E.2d at 702 (citations omitted). Because the parties had not clearly indicated their intention by the language of their agreement, the *White* Court then held that the trial court would have to conduct an evidentiary hearing to determine their intent at the time of their agreement. *Id.* at 670, 252 S.E.2d at 703. Further, the *White* Court established a presumption that the provisions in a separation agreement or consent judgment are separable, so that the burden of proof is upon the party contending that the support and property settlement provisions are not separable to rebut the presumption by the greater weight of the evidence. *Id.* at 672, 252 S.E.2d at 704.

The Supreme Court reaffirmed the *White* approach and presumption of separability in *Marks v. Marks*, 316 N.C. 447, 342 S.E.2d 859 (1986). Because there was no language in the *Marks* agreement relative to the separability of its provisions, the Supreme Court held that the *White* presumption arose. *Id.* at 456, 342 S.E.2d at 864. The wife, however, presented no evidence to rebut the non-integration presumption, therefore, the trial court correctly held the support provisions to be separate and modifiable. *Id.* at 458, 342 S.E.2d at 866.

In the case before us, the periodic payments to the wife are set out in a section of the Agreement labeled "ALIMONY." The payments are specifically referred to as "alimony," but such a characterization is not conclusive. *White*, 296 N.C. at 667, 252 S.E.2d at 702. Indeed,

other language in the Agreement tends to indicate that the payments may not be "true" alimony. The Agreement provides that the monthly payments are not to be "increase[d] or decrease[d]." Further, there are no recitations in the Agreement that defendant was a dependent spouse, nor were there recitations as to fault grounds, need, ability to pay, or reasonableness of amount. While those factors may be considered by the trial court on the question of whether an agreement is integrated, they are not conclusive. *See id.* at 669, 252 S.E.2d at 702.

This Court considered a similar situation in *Hayes v. Hayes*, 100 N.C. App. 138, 394 S.E.2d 675 (1990). In *Hayes*, the trial court held that as a matter of law certain periodic payments to the wife were not "true" alimony, although labeled as such, where (1) there was no finding that the wife was a dependent spouse, (2) there were no findings of need, ability to pay, or that the amount ordered was reasonable, (3) the wife gave up her right to ask for an increase in the amount, and (4) payments were to be made for a definite term of five years. *Id.* at 143-44, 394 S.E.2d at 678. This Court reversed, holding that it was error for the trial court to refuse to hold an evidentiary hearing where there were no "explicit, unequivocal provisions on integration or non-integration." *Id.* at 148, 394 S.E.2d at 680.

In this case, the Agreement contained the following merger clause:

ENTIRE AGREEMENT. This agreement contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressed and set forth herein.

At the urging of counsel for defendant, the trial court considered this merger clause as an integration clause, and found as a fact that:

14. The Separation Agreement between the parties, dated July 17, 1990, is a fully integrated agreement as set forth in the portion of said agreement entitled, ENTIRE AGREEMENT which says, "This agreement contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressed and set forth herein."

This clause quoted by the trial court, however, is not an integration clause but instead is a standard merger clause which is often used in contracts to merge prior discussions, negotiations, and representations into the written document and avoid litigation over the question of whether there were oral representations made outside the

**HOLCOMB v. HOLCOMB**

[132 N.C. App. 744 (1999)]

written agreement. *See Zinn v. Walker*, 87 N.C. App. 325, 333, 361 S.E.2d 314, 318 (1987), *disc. review denied*, 321 N.C. 747, 366 S.E.2d 871 (1988). An integration clause, on the other hand, is designed to express the intent of the parties as to whether the provisions of an agreement were reciprocal consideration for each other so that the agreement is an integrated agreement. *See Bunn*, 262 N.C. at 70, 136 S.E.2d at 243. For example, in *Britt v. Britt*, 36 N.C. App. 705, 245 S.E.2d 381 (1978), the parties included the following language in their agreement:

> The provisions for the support, maintenance and alimony of wife are independent of any division or agreement for division of property between the parties, and shall not for any purpose be deemed to be a part of or merged in or integrated with a property settlement of the parties.

*Id.* at 711, 245 S.E.2d at 385. Likewise, in *Acosta v. Clark*, 70 N.C. App. 111, 318 S.E.2d 551 (1984), the parties' separation agreement provided that

> [t]he provisions of alimony to the Wife are independent of any division or agreement for division of property between the parties, and shall not for any purpose be deemed to be a part of or merged in or integrated with a property settlement of the parties.

*Id.* at 112, 318 S.E.2d at 552.

No such clause or language was present in the Agreement before us in this case and the trial court erred in treating the merger clause as an integration clause. Although the trial court heard other evidence and made other findings which support its conclusion that the Agreement was integrated, we cannot say what weight it gave to the erroneous consideration of the merger clause as evidence that the Agreement was integrated. Moreover, even though there are many indications on the face of the instrument that it was an integrated agreement, we cannot say as a matter of law that the provisions were intended as reciprocal consideration for one another. Such a determination of the intent of the parties is for the trial court. Therefore, this matter must be remanded for reconsideration and entry of a new judgment by the trial court.

On remand, the trial court is to weigh the credible evidence and determine whether defendant has met her burden of showing that the "alimony" provisions and the "property settlement" provisions were

intended to be reciprocal consideration for each other, so that the Agreement is an integrated agreement, and thus the "alimony" payments are non-modifiable. The trial court may make its new order based on the existing record, unless in its discretion it chooses to open the record to take additional evidence.

Plaintiff did not appeal from the trial court's findings that he had failed to make the ordered monthly payments or the conclusion that he was in contempt. He also did not appeal the order to confine him based on his contemptuous failure to make the payments, and setting out the manner in which he might purge himself. Because there was no appeal from or error assigned to those portions of the trial court's order, such provisions are affirmed.

Affirmed in part; vacated and remanded in part.

Judges GREENE and LEWIS concur.